```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION
```

| | |
|---|---|
| KEVIN COOPER, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:09-CV-0187-D |
| VS. § | |
| § | |
| WARDEN DAVID BERKEBILE, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

The June 5, 2009 motion to dismiss of defendants David Berkebile ("Warden Berkebile"), former Warden of FCI-Seagoville, Texas, and Joseph Capps, M.D. ("Dr. Capps"), Medical Director FCI-Seagoville, is granted for the following reasons.[1] Plaintiff Kevin Cooper ("Cooper") is allowed 30 days to file an amended complaint that states a claim on which relief can be granted and, if he seeks to sue Warden Berkebile and Dr. Capps in their individual capacities, to support his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of their conduct at the time of the alleged acts.[2]

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[2] The court referred defendants' motion to the magistrate judge, who filed a recommendation on August 18, 2009 that the motion be denied. Because review of the magistrate judge's

Cooper purports to assert *Bivens* claims[3] against Warden Berkebile and Dr. Capps that arise under the Eighth Amendment. To state such claims, Cooper must establish that Warden Berkebile and Dr. Capps acted with deliberate indifference to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For an individual to act with deliberate indifference, he must act with subjective recklessness. *Id.* at 839-40. There is no liability "unless the official knows of and disregards an excessive risk to inmate health[.]" *Id.* at 837. To overcome the defense of qualified immunity, Cooper must plead facts that, taken in the light most favorable to him, show that defendants' conduct violated a constitutional right. *See, e.g., Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[4] "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his

---

findings and recommendation is *de novo*, the court can decline to adopt the recommendation without discussing it in detail.

[3]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[4]*Ellis* and several cases cited hereafter address claims brought under 42 U.S.C. § 1983 rather than *Bivens*. Section 1983 cases are properly consulted when addressing *Bivens* actions. *See, e.g., Boyd v. Driver*, 579 F.3d 513, 515 n.5 (5th Cir. 2009) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials.") (quoting *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999))). The cases cited hereafter are § 1983 actions.

conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 284 (5th Cir. 2002) (emphasis in original) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

The June 5, 2009 motion to dismiss of Warden Berkebile and Dr. Capps was filed in response to Cooper's January 28, 2009 complaint and his February 27, 2009 answers to the magistrate judge's questionnaire. Turning first to the complaint, the court holds that it is clearly insufficient to overcome the defense of qualified immunity. The only pertinent specific allegations concerning Warden Berkebile relate to his September 15, 2008 written reply to Cooper's request for administrative remedy (which Warden Berkebile received on August 26, 2008). *See* Compl. ¶ 5.6, D. June 5, 2009 App. 5. That reply, attached as an exhibit to the complaint, partially grants Cooper the relief he seeks, and it states that Cooper was examined by a staff physician after he arrived at FCI-Seagoville and that he has been approved for appointments for a repeat CT scan and a consultation with a local maxillofacial surgeon. *See* Compl. ¶ 5.6 and Ex. D, D. June 5, 2009

App. 5 and 14. According to Cooper's answers to the magistrate judge's questionnaire, Cooper in fact received the CT scan, and he was taken to the hospital for an appointment with a maxillofacial surgeon, although the doctor did not show for the appointment. *See* P. Ans. to Quest. No. 1, D. June 5, 2009 App. 55, 56.

The only specific allegations concerning Dr. Capps that are found in the complaint are contained in ¶¶ 5.6 and 5.7. Cooper alleges that, in a communication received on October 22, 2008, Dr. Capps stated that an evaluation was pending and that the Bureau of Prisons ("BOP") South Central Regional Office had extended the response time from October 30, 2008 to November 30, 2008. Compl. ¶ 5.6, D. June 5, 2009 App. 5. And Cooper avers that Dr. Capps told him that, "because his time was short (less than 15 months) that it was possible that there would not be enough time to take care of the surgery." Compl. ¶ 5.7, D. June 5, 2009 App. 5. There is no allegation, for example, that Dr. Capps as Medical Director had the authority to direct that Cooper receive any form of surgery or, assuming he had such authority, that he was personally and subjectively indifferent to Cooper's need for the surgery.

The other allegations of the complaint relate to conduct of others, *see, e.g.,* Compl. ¶ 6.1, D. June 5, 2009 App. 6, or are general and conclusory, *see, e.g.,* Compl. ¶ 6.2, D. June 5, 2009 App. 6. These averments do not specifically assert that either defendant was deliberately indifferent to Cooper's serious medical

needs.

Nor are Cooper's answers to the magistrate judge's questionnaire sufficient. In response to the magistrate judge's request that Cooper allege specific facts supporting his claim against Warden Berkebile, Cooper states as follows: Warden Berkebile admitted to Cooper that he was aware of Cooper's case and what had occurred since Cooper arrived at FCI-Seagoville; Warden Berkebile branded him a "trouble maker"; and Warden Berkebile threatened to continue the aggravation of his preexisting condition by transferring him to another institution. P. Ans. to Quest. No. 2, D. June 5, 2009 App. 58. The only specific statement attributed to Warden Berkebile is that Cooper was "a troublemaker." This is insufficient to plead an Eighth Amendment claim or to overcome the defense of qualified immunity. The balance of the paragraph contains Cooper's conclusory characterization of what Warden Berkebile said. *See id*. In Cooper's answer to another question in the magistrate judge's questionnaire, he states that Warden Berkebile told him he did not have to worry because Warden Berkebile was going to send him to a county jail or halfway program for work release. *See* P. Ans. to Quest. No. 1, D. June 5, 2009 App. 56.

In the next paragraph of his response to Question No. 2, Cooper asserts that Warden Berkebile was "responsible for the acts and conduct of his agents at Seagoville." P. Ans. to Quest. No. 2,

D. June 5, 2009 App. 58. He asserts that Warden Berkebile was aware of, but chose not to correct, the deliberate disregard of Cooper's medical needs by others. *Id.* This allegation—which asserts that Warden Berkebile is responsible for the conduct of others—is also conclusory and insufficient to overcome qualified immunity. At a minimum, it fails to plead specific facts regarding Warden Berkebile's personal involvement or to plead specifically a basis to hold Warden Berkebile personally liable for the conduct of others.

In response to the magistrate judge's request that Cooper allege specific facts supporting his claim against Dr. Capps, Cooper includes allegations in response to two questions concerning two different appointments with Dr. Capps (July 24, 2008 and February 11, 2009). On July 24, 2008 Dr. Capps saw Cooper and told him that "BOP medical would probably not honor the prior surgeon's commitment for corrective surgery," that Cooper should see a doctor after he was released, that Dr. Capps did not have any of Cooper's medical records, and that they would have to start all over. P. Ans. to Quest. No. 1, D. June 5, 2009 App. 55; *see also* P. Ans. to Quest. No. 3, D. June 5, 2009 App. 60. Despite Cooper's complaints of severe pain and his request to see a surgeon, Dr. Capps refused to discuss his pain, he told Cooper "to 'get the hell' out of his office," and he did not treat him. *Id.* On February 11, 2009 Cooper saw Dr. Capps again. During this appointment, Dr. Capps

explained why Cooper would not receive treatment. According to Cooper,

> Dr. Capps told me *that this was nothing personal in his decision*, but that *informal BOP policy* was to delay and delay surgery where an inmate had little time left to serve at a federal institution. He said that an idiot could see that my problem was not cosmetic and that he understood that the injury would cause "deep" pain, but that it was his job to get me out of here (the institution) without major medical expense.

P. Ans. to Quest. No. 3, D. June 5, 2009 App. 60-61 (emphasis added); *see also* P. Ans. to Quest. No. 1, D. June 5, 2009 App. 57. And despite Cooper's complaint "of ongoing pain," he received no treatment. *Id.* at 61.

Taken together, these allegations essentially assert that Dr. Capps failed to treat Cooper for complaints of severe pain; he was rude and unprofessional on one occasion; and he advised Cooper that the surgery he needed would probably not be done while Cooper was in BOP custody and that he needed to see a doctor after he was released. But Cooper also asserts that Dr. Capps's decision regarding surgery was not a personal one; instead, it was dictated by informal BOP policy. There are no allegations that, as the Medical Director, Dr. Capps had the authority to order that the surgery be performed (particularly if BOP policy provided otherwise), that Dr. Capps agreed with the alleged informal BOP policy not to provide surgery to prisoners who faced imminent release, or that Dr. Capps was acting out of subjective

- 7 -

indifference (versus acting in accordance with BOP policy). In fact, according to Cooper, Dr. Capps effectively said that the decision was not his to make. *See* P. Ans. to Quest. No. 3, D. June 5, 2009 App. 60 ("Dr. Capps told me that this was nothing personal in his decision"). Moreover, despite the allegations of Cooper's complaint and questionnaire answers, Cooper's responses also indicate the following: First, he in fact received a CT scan on October 10, 2008. P. Ans. to Quest. No. 1, D. June 5, 2009 App. 55. Second, he was taken to Parkland Hospital on January 20, 2009 for an appointment with a maxillofacial surgeon. *Id.* at App. 56. Although the doctor did not show for the appointment, there is no allegation that either defendant was responsible for the non-appearance. Third, Cooper was receiving chronic care appointments, although they were sometimes late. P. Ans. to Quest. No. 3, D. June 5, 2009 App. 60.[5] Concerning Cooper's assertion that Dr. Capps was deliberately indifferent to Cooper's continuing pain during the appointment of July 24, 2008, the allegation of a one-time occurrence in which Dr. Capps refused to discuss Cooper's pain and told him "to 'get the hell' out of his office" is insufficient in the circumstances presented here to establish an Eighth Amendment claim (deliberate indifference to a serious medical need) or to

---

[5]There is also an indication in the record that Cooper has since received the surgery he requested. But since this is outside the scope of the complaint and questionnaire answers, the court will not consider this in deciding defendants' motion to dismiss.

- 8 -

overcome the defense of qualified immunity.

Although the court is granting defendants' motion to dismiss, Cooper is entitled to replead. *See, e.g., Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted [defendant's] motion to dismiss, it gave [plaintiff] one more opportunity to plead his best case, because he was proceeding *pro se*."). Moreover, when a public official raises the defense of qualified immunity, the court should afford the plaintiff an opportunity to amend his complaint to directly engage the assertion of qualified immunity and plead specific facts that might overcome it. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). In particular, Cooper must allege sufficient facts that, viewed favorably to him and assumed to be true, establish that Warden Berkebile and Dr. Capps individually committed specific acts or failed to act in a manner that violated Cooper's clearly established Eighth Amendment rights to such a degree that "*all* reasonable officials in the defendant[s'] circumstances would have then known that the defendant[s'] conduct violated" those rights. *Cozzo*, 279 F.3d at 284 (emphasis in original). Cooper must file his amended complaint within 30 days of the date of this memorandum opinion and order.

- 9 -

Defendants' June 5, 2009 motion to dismiss is granted, and Cooper is allowed to replead.

**SO ORDERED.**

February 10, 2010.

*[signature: Sidney A. Fitzwater]*
SIDNEY A. FITZWATER
CHIEF JUDGE